UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Robert M. Kolvek** | : | Case No. 5:05-CV-02598 |
| Plaintiff(s), | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **Michelle Eberlin** | : | **MEMORANDUM & ORDER** |
| Defendant(s). | : | |

On November 4, 2005, Robert M. Kolvek ("Kolvek" or "Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On December 13, 2005, the Court referred this case to Magistrate Judge Kenneth S. McHargh, ultimately for preparation of a Report and Recommendation ("R&R") regarding Kolvek's petition. (Doc. 6.) On March 13, 2006, Respondent filed an Answer/Return of Writ. (Doc. 13.)[1] On April 6, 2006, Kolvek filed a Reply/Traverse. (Doc. 17.) On May 24, 2007, Magistrate Judge McHargh issued his R&R recommending that this Court deny Kolvek's petition and dismiss this case. (Doc. 20.) On June 11, 2007, Kolvek filed objections to that R&R. (Doc. 21.)

The Court agrees with the R&R's conclusion that Kolvek has failed to demonstrate that the state court rulings are contrary to, or involved an unreasonable application of, clearly established Federal law. As outlined in greater detail below, Kolvek's petition must be **DENIED** and his case **DISMISSED**.

---

[1] Respondent sought and received two extensions of time to file this response, for good cause shown. (*See* Docs. 7,8,11,12.)

**I. BACKGROUND**

The R&R accurately sets forth the factual and procedural background of this case. (Doc. 20 at pp. 3-7.) The Court adopts the R&R's articulation of that background. Because it is so critical to an understanding this petition, however, the Court will reiterate and supplement those facts here.

The underlying case was accurately described by the Ohio Court of Appeals:

On May, 10, 2004, the Akron Police stopped a vehicle driven by [Kolvek]. Records checks indicated that the plates on the vehicle were stolen and that [Kolvek] did not possess a valid driver's license. The arresting officer handcuffed [Kolvek], and then removed [Kolvek]'swallet from [Kolvek]'s pocket. Upon doing so, the officer discovered two folded pieces of paper containing a substance which [Kolvek] declared to be methamphetamine ("meth"); this was confirmed by a field test.

Located within the vehicle was apparatus which could be used to manufacture meth: a fan; jars of various liquids; coffee filters; rock salt; brake cleaner, glassware; and tubing. [Kolvek] admitted that the apparatus constituted a meth lab and it had been in his possession for twenty-four hours. [Kolvek] stated that he took possession of the lab as a favor to his friend, Lisa Hart, because she had been arrested for drug possession. [Kolvek] said that Hart's sister had called him and asked him to remove the lab so the police would not find it and Hart would not get into trouble. [Kolvek] also declared that he had used drugs for two years and had helped Hart in manufacturing meth in exchange for drugs and money.

> FN1. [Kolvek] was previously arrested on February 22, 2003,and March 26, 2003, and charged with, among other things, possession of drugs. Those charges were pending at the time of his arrest in this case on May 10, 2003. As a result of those arrests, [Kolvek] was convicted. On March 31, 2004, and May 19, 2004, this court filed opinions affirming those criminal convictions.

A narcotics specialist from the police department went to the scene and testified at trial regarding the equipment found in the vehicle. His testimony indicated that the objects found were typically used in a meth lab and showed signs of recent use in that fumes were still being emitted. He also testified regarding Lisa Hart's arrest and the equipment found at her house; he stated that the cut end of the tubing in [Kolvek]'s car matched the cut end of the tubing in Hart's house, indicating that the pieces had once been part of the same lab.

> [Kolvek]'s girlfriend, present in the car at the time of the traffic stop, testified at trial that they were removing the lab from Hart's house and [Kolvek] was paid in drugs to do so.
>
> [Kolvek]'s indictment was for: the illegal manufacture of drugs in violation of R.C. 2925.04(A), a felony of the second degree; obstructing justice in violation of R.C. 2921.32(A)(3), a felony of the third degree; aggravated possession of drugs in violation of R.C. 2925.11, a felony of the fifth degree; receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree; driving under suspension in violation of R.C. 4507.02, a misdemeanor of the first degree, and illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Prior to trial, the trial court amended the indictment to include a charge of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041, a felony of the third degree. A jury convicted [Kolvek] on all charges except the violation of R.C. 2925.04(A), illegal manufacture of drugs.

(Doc. 15 at 3-5 (citing *State v. Kolvek*, 2004 Ohio 3706, P5 (Ohio Ct. App. July 14, 2004).)

At trial, Kolvek's counsel appears to have focused on securing an acquittal for the two charges involving the manufacture of drugs. (*See, e.g.*, Doc. 13 Ex. 35 at 299 ("I'm not asking you [the jury] to deny your responsibility. [Kolvek] is a junky. He is in trouble for being a junky… Don't make him a manufacturer when he is not[,] just because you don't like drugs.").) Kolvek was, as indicated, acquitted of "illegal manufacture of drugs," the charge that appeared to carry the highest potential penalty. He was convicted on all of the other counts, including the charge under R.C. 2925.041 for possession of chemicals with the intent to manufacture a controlled substance. *See Kolvek*, 2004 Ohio 3706, P5.

Kolvek unsuccessfully attempted to appeal his conviction on the remaining counts to the intermediate state appellate court. Three of the grounds raised before that court are again raised in this petition:

> 1) There was insufficient evidence to sustain a conviction and, for this reason, the trial court should have granted Kolvek's Rule 29 motion.
>
> 2) Similar acts evidence was improperly admitted over trial counsel's objections.

3

>   3) Kolvek was denied due process because the trial proceeded on a supplemental indictment that was filed and served upon Appellant shortly before trial.

(Doc. 15 at 5 (citations omitted).)

On Aug. 17, 2004, Kolvek appealed to the Ohio Supreme Court. Three of the claims he attempted to assert to that court are relevant to his instant petition:

>   1) To ensure convictions will be based on the manifest weight of the evidence, any fact that increases the maximum penalty, or degree of an offense, must be alleged in the indictment and proven beyond a reasonable doubt.
>
>   2) Other acts evidence is not admissible when prejudicial value is greater than probative value.
>
>   3) Defendants are entitled to reasonable continuence [sic] when the State indicts a Defendant on additional charge two days prior to trial and arraigns that Defendant the day of trial.

(*Id*. at 5-6 (citation omitted).) The Ohio Supreme Court dismissed Kolvek's appeal on the grounds that it did not involve any substantial constitutional question. (*Id*. at 6.)

Kolvek then filed a timely, but unsuccessful, application to re-open his appeal on the ground that his appellate counsel was ineffective for failing to raise twelve different arguments to the appellate court:

>   1) Trial counsels [sic] lack of investigation prior to trial and sentencing.
>
>   2) Trial counsel never visited defendant to prepare for trial.
>
>   3) Trial counsel prepared for trial the day of trial in front of the county prosecutor because we shared the same table: approximately 3 feet away.
>
>   4) Defendant never received any client-attorney privileges.
>
>   5) Explains that Judge Hunter told defendant that he would not get another attorney: defendant was forced to have Jon Sinn represent him.
>
>   6) My other two attorneys withdrew and it wasn't defendants fault.
>
>   7) Letter states how defense witness was not allowed to testify completely.

4

    8) How counsel failed to file a motoin [sic.] and defendant attempted to.

    9) That Judge Hunter kept my talking limited:
        A. She never asked me why my attorneys withdrew;
        B. She would get mad at me, lecture me and never gave me a chance to speak;
        C. She never asked why defendant tried to file his own motions;
        D. Judge Hunter was always very short with me but I always maintained respect for the court.

    10) Defendant was truly not familiar with the judicial process. He was already in trouble and awed by the things happening to him. He gave prudence to the proceedings, maintained the utmost respect for every court official and had faith in the justness and fairness of the system. Defendants [sic.] vision of the system worked to his determent.

    11) [T]he indictment and jury instructions [were in error].

    12) [There were] mitigating factors that trial counsel never raised or investigated.

(Doc. 13 Ex. 16A at 4-5.)[2]  After the intermediate court rejected this application, Petitioner attempted to appeal that rejection to the Ohio Supreme Court, which declined to hear his appeal. (*Id.*)  Kolvek then filed this petition for a writ of habeas corpus, on Nov. 4, 2005. (Doc. 1.)

## II. LAW AND STANDARD OF REVIEW

Because Kolvek filed his habeas petition on November 4, 2005, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of that petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003). AEDPA provides that when a federal habeas claim has been adjudicated by the state courts, a writ shall not issue unless the state adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of

5

the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

### A.  Habeas Courts May Only Review Certain Errors

Even when the state has committed constitutional errors, a habeas court is not necessarily entitled to provide relief.  A writ can only issue under 28 U.S.C. § 2254(d)(1) if a state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  Under 28 U.S.C. § 2254(d)(2), a writ is only appropriate if the state adjudication was "objectively unreasonable," rather than merely erroneous or incorrect. *Williams*, 529 U.S. at 409-411.  A habeas court, moreover, reviews only for serious constitutional errors and does not engage in factual error correction. *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  To the extent that a state court's factual conclusion is alleged erroneous and to have resulted in a constitutional violation, the state court's finding is rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F. 3d 487, 493-494 (6th Cir. 2004).

### B.  Even Otherwise Cognizable Errors are Not Always Reviewable

A federal court will not review a state court's interpretation of state law.  For this reason, courts do not review any state court determination that is supported by an independent and adequate basis that does not implicate a federal right. *See Michigan v. Long*, 463 U.S. 1032, 1039 (1983) ("[W]here the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment.") (citation omitted); *see*

---

[2]  The Magistrate Judge appears to have considered Kolvek's Ninth objection to be three

*also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 424 (6th Cir. Ohio 2003).  This principle operates to limit the permissible role of a habeas court, which cannot adjudicate a state court determination that a claim was simply not fully presented to the state courts for review, as such a "procedural default" operates as an independent and adequate state jurisdictional bar.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Haliym v. Mitchell*, 492 F.3d 680, 691 (6th Cir. 2007). Accordingly, when a petitioner has failed to comply with a state procedural rule with respect to a particular claim, federal courts are frequently barred from considering the underlying claim.  *See id*.

To determine whether a claim has been procedurally defaulted, courts of the Sixth Circuit first ask whether a claim has been presumptively defaulted and then, if so, whether petitioner can show some grounds under which a court could excuse this default.  *See Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 2007); *Abdus-Samad v. Bell*, 420 F.3d 614, 623 (6th Cir. 2005).  To determine whether a claim has been presumptively defaulted, a court inquires whether:

> (1) there is a state procedural rule that applies to the petitioner's claim with which the petitioner failed to comply;
>
> (2) that rule is actually enforced by state courts;
>
> (3) the state procedural forfeiture is an independent and adequate state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  If each prong of this analysis is met, a claim is presumptively defaulted.  *See Abdus-Samad*, 420 F.3d at 623.  Even if these first three prongs are met, however, a habeas court will review the merits of an underlying constitutional claim if a petitioner can show "cause and prejudice" for failure to follow the relevant procedural

---

separate objections.  (*See* Doc. 20 at 27.)

rule or that the petitioner is "actually innocent" of the underlying offense. *Poindexter v. Mitchell*, 454 F.3d 564, 583 (6th Cir. 2006).[3]

### 1.  Cause and Prejudice

Both "cause" and "prejudice" are substantial hurdles. To demonstrate cause, the petitioner must establish "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, the petitioner must show that "errors at trial 'worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). Under this standard, prejudice does not occur unless the petitioner demonstrates that there is "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

### 2.  Actual Innocence

It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). For a petitioner to state a claim for "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin*, 340 F.3d at 427. This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells*, 538 F.3d at 507. As another court has articulated the relevant

---

[3] Many courts refer to this process of determining presumptive default and then examining whether there are grounds under which a court might excuse this default as a singular four-part analysis. *See, e.g.*, *Franklin*, 434 F.3d at 418.

consideration, new evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). New evidence, consequently, can only excuse procedural default in "extraordinary" cases. *Carter*, 443 F.3d at 538.[4]

### III. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magistrate Judge McHargh's R&R addresses all fourteen grounds upon which Kolvek seeks habeas relief.[5] Broadly speaking, the R&R addressed four categories of claims: (1) nine claims that Kolvek failed to properly raise before the Ohio courts; (2) two claims that Kolvek's conviction was against the manifest weight of the evidence; (3) two claims that the state violated Kolvek's due process rights; and (4) the claim that Kolvek's appellate counsel was ineffective.

The R&R begins by explaining that Kolvek failed to raise nine of his fourteen claims on direct appeal in state court and, consequently, has procedurally defaulted these claims. (Doc. 20 at 11 - 23.) Magistrate Judge McHargh analyzed each of these claims to determine whether Kolvek had made a showing of "cause and prejudice" or "actual innocence" that would allow a habeas court to review this errors notwithstanding the default. (*Id*.) The Magistrate Judge concluded that Kolvek had not made such a showing. (*Id*.)

---

[4] The Sixth Circuit has yet to address the scope of evidence that a habeas court may properly consider to be "new." *See Plaza v. Hudson*, No. 1:07-CV-674, 2008 U.S. Dist. LEXIS 102083, at *41-42 (N.D. Ohio Dec. 17, 2008).

[5] Kolvek originally sought relief on sixteen grounds, but he ultimately asked this Court to dismiss two of them. (Doc. 17 at 4.)

Similarly, the R&R examined Kolvek's allegations that his appellate counsel was constitutionally ineffective and found that allegation to be without merit. (*Id*. at 24-30.)

The R&R next considered Kolvek's contentions that the trial court should have granted Kolvek's request for a continuance and should not have admitted "similar acts evidence." (*Id*. at 30-39.) The Magistrate Judge reasoned that, while such claims are not ordinarily cognizable on habeas review, a habeas court should ensure that Kolvek's due process rights were not violated. (*Id*.) The R&R, however, concluded that neither determination by the trial court rose to the level of a violation of Kolvek's due process rights. (*Id*.)

The R&R also concluded that a "manifest weight of the evidence" claim is not cognizable on federal habeas review. (*Id*. at 23-24.)[6]

Based on this detailed analysis, the Magistrate Judge concluded that this Court should **DENY** the instant petition and **DISMISS** this case.

## IV. KOLVEK'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

While the Court has gone to great lengths to try to understand all of Kolvek's objections, even a careful reading of those objections leaves questions regarding what Kolvek intends to convey. Many of Kolvek's sentences do not appear directed at the relevant legal considerations, and, instead appear to argue the merits of claims that the Magistrate Judge concluded were defaulted.

Courts facing such objections sometimes simply decline to address any particular portion of the R&R, presumably on the defensible conclusion that there is not anything obvious to address on the face of objections that are difficult to decipher. *See Iverson v. State*, No.07-982,

---

[6] As explained below, the Court does not adopt this conclusion to the extent that it can be read as precluding "actual innocence" as an independent basis for habeas relief.

2007 U.S. Dist. LEXIS 87155, at *1 (D. Minn. Nov. 27, 2007).  Even this could be construed as generous, because a litigant does not preserve for appellate review any issues to which that party does not specifically object.  *Martin v. LaBelle*, 7 Fed. Appx. 492, 494 (6th Cir. 2001) (per curiam) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995)).

The Court has nevertheless endeavored to identify Kolvek's objections; it seems that his main assertions are that the R&R should have:

> 1) Specifically addressed Kolvek's contention that the State was untimely in its response to Kolvek's petition.
>
> 2) Found that he did not procedurally default numerous claims, because he is in possession of newly discovered evidence indicating his innocence.
>
> 3) Concluded that the denial of a requested continuance by the trial court and the trial court's admission of "similar acts evidence" violated Kolvek's due process rights.
>
> 4) Found that his appellate counsel was ineffective, particularly for failing to raise the issue of a "fatal variance" from the original indictment.

(*See* Doc. 21.)  To the extent that Kolvek makes other objections, they are not properly preserved for review by this Court.[7]  The Court has, however, out of an abundance of caution, conducted a careful *de novo* review of the entire R&R, as well as the briefs and relevant supporting materials.

---

[7] Because Kolvek has objected to the vast majority of the R&R, it is probably more accurate to state that the Court simply declines to respond directly to many of Kolvek's particular arguments as to why the R&R reaches the wrong result.  The Court, for example, will not attempt to directly address assertions such as the following:

> Kolvek claims that the Magistrate's Report regarding claim fourteen: Delayed indictment, page 18, should have been analyzed in order starting with ground twelve: Denial of Motion for a Continuance or Dismissal, page 30, or the report, and ground thirteen, page 36, of the report because grounds twelve and thirteen present new facts that Kolvek didn't have at the time of his trial or arraignment on the supplemental charge, Possession of Chemicals with Intent to Manufacture.

(Doc. 21 at 13.)  Although it appears Kolvek is asserting that the Magistrate should have analyzed Kolvek's claim with respect to his delayed indictment in light of his claims regarding similar acts evidence and the denial of his motion for a continuance, the Court finds such an

The Court finds that the Magistrate Judge reached the proper conclusion based on applicable law and, accordingly, **ADOPTS** the R&R, except to the extent that it can be read as foreclosing the review of "actual innocence" as an independent basis for habeas relief, thus **DENYING** Kolvek's petition and **DISMISSING** this case.  Because the R&R is well-reasoned and unusually thorough, the Court will provide only a brief supplementation of its conclusions.

## V. DISCUSSION

### 1. Respondents' Filings Were Timely

Kolvek objects to the R&R because he asserts that the Magistrate Judge failed to address the untimeliness of Respondents' brief in opposition to his petition for habeas corpus.  (Doc. 21 at 2-3.)  Kolvek believes that Respondents' brief was due on March 6, 2006, yet notes that it was filed on March 13, 2006.

The Respondents' filing was not untimely.  Although the Respondents' brief was, at one point, due on March 6, 2006 (*see* Doc. 8), Respondents' asked the Magistrate Judge to extend that deadline (Doc. 11), a request that was granted in part for good cause shown (Doc. 12).[8]  Because Respondents' brief was filed on March 13, 2006 (*see* Doc. 13), prior to the March 20, 2006 deadline (*see* Doc. 12), Kolvek's objection to its filing is not well-taken.

### 2. Kolvek's Newly Discovered Evidence Does Not Excuse Procedural Default

Kolvek asserts that he is in possession of newly discovered evidence that should excuse his procedural default of various claims.  (*See* Doc. 1 at 36-37; Exs. D, E, H, N.)  The R&R only

---

objection both difficult to fully understand and not well-taken to the extent that it is understood.  Kolvek makes objections of this type regarding almost every conclusion reached by the Magistrate Judge.

[8] Respondents had asked to extend this deadline to May 5, 2006, but the Magistrate Judge Ordered the response filed by March 20, 2006.

discusses two of these pieces of evidence (*see* Doc. 13 at 14 (addressing Doc. 1 Exs. E & N)), presumably because it was not initially apparent that Kolvek intended to assert that all four exhibits excused Petitioner's procedural default.[9]  None of the evidence, however, excuses Kolvek's default.

### A.  The Potential Testimony of Cathy Knox

Exhibit D is a sworn affidavit from Kolvek's co-defendant, Cathy Knox.  (Doc. 1 Ex. D.)  Ms. Knox states that she did not feel she had a free choice in choosing whether or not to testify, or about the scope of her testimony.  (*See id*.)  She further states that, had she been allowed to testify fully and freely, this testimony would have been favorable to Kolvek's defense.  (*See id*.)[10]  Her affidavit is intended to cast doubt upon the charge that Kolvek possessed "chemicals for the manufacture of drugs."  (*E.g. id*. at ¶11 ("I wanted to tell a jury if we knew how to make meth then how come we did not have money, own a car, or have a place to live.").)[11]  It appears directed, particularly, at the county prosecutor's contention that Kolvek had possessed the illegal

---

[9] The Court will assume, but does not decide, that all of this information qualifies as "newly discovered evidence" for purposes of asserting "actual innocence."

[10] Kolvek was not convicted for manufacture or distribution of drugs, but for "obstructing justice," "aggravated possession of drugs," "receiving stolen property," "driving under suspension," "illegal use or possession of drug paraphernalia," and "illegal assembly or possession of chemicals for the manufacture of drugs."  *Kolvek*, 2004 Ohio 3706, at P5.

[11] The affidavit does confirm Kolvek's physical possession of the drugs and manufacturing equipment.  (*See e.g.*, *id*. at ¶ 4 ("[T]here was absolutely no way we had the [drugs and materials] … in our possession for 24 hours.").)  There is no express "duration" requirement under Ohio law for any of the offenses for which Kolvek was convicted; Ohio law simply requires "control."  (*See id*. at   Ohio Rev. Code 2925.01(K) ("'Possess' or 'possession' means having control over a thing or substance."); *State v. Jones*, 2008 Ohio 5443, P17 (Ohio Ct. App. Oct. 22, 2008) ("Possession is a voluntary act if the possessor knowingly procured or received the thing possessed … [one possesses drugs when one] knowingly exercises dominion and control over [drugs], even though [the drugs] may not be within [one's] immediate physical possession."); *State v. Graham*, 2008 Ohio 3985, P6-P7 (Ohio Ct. App. Aug. 7, 2008) (same).

13

paraphernalia for over 24 hours (*see* Doc. 13 Ex. 35 at 283-85), which the prosecutor argued showed intent to use that paraphernalia for manufacturing. (*See* Doc 1. Ex D at ¶4 ("[T]here was absolutely no way we had the [drugs and materials] … in our possession for 24 hours.").)

The Court cannot conclude, however, that this affidavit helps Kolvek in a habeas proceeding. With respect to a claim of actual innocence, it is true that many juries might not find that Kolvek had the intent to manufacture drugs (*see* Doc. 13 at Ex. 8.), a critical element of one of the crimes for which Kolvek was convicted. The Court cannot conclude, however, that no reasonable jury could convict Kolvek: it is undisputed that he possessed both drugs and the equipment with which to make more. There was also evidence in the record that Kolvek had used the very equipment in his possession to manufacture drugs in the past, or at least to assist in that practice. Nothing in this affidavit alters that conclusion. It thus cannot serve to excuse procedural default.

### B. Kolvek's Inability to Verify the Basis for the Police Officers' Stop

Exhibit E is a letter from Elizabeth Young attesting that a particular license plate number, was registered in Summit County in May 2005. Exhibit N is a letter from co-defendant Knox stating that the same license plate number has never been reported stolen in either Summit County or Cuyahoga County. These letters are offered as support for Kolvek's contention that the police officers perjured themselves in his trial, because those officers testified that they stopped Kolvek because he was driving a car with stolen plates.

These letters, however, do not show exactly what the Petitioner believes them to show. Ms. Young's letter simply attests that the license plate was duly registered one year after Kolvek's trial. This is not probative of whether the license plate had been reported stolen over a year before. Ms. Knox' letter are hearsay assertions that two county officials in Cuyahoga and

14

Summit County claim to have no record of this license plate ever being reported stolen to their departments. This, without more, is only barely probative of whether the police had a record of this license plate as stolen at the time of Kolvek's arrest. These letters, consequently, do not operate to excuse Kolvek's procedural default of his claims.

### C. The Police Report

Exhibit H is the initial police report in Kolvek's case. It is clear from Kolvek's objections to the R&R that the Petitioner believes that this report somehow indicates that the police officers perjured themselves during Petitioner's trial. (*See* Doc. 21 at 6.) The Court, however, does not understand why Kolvek arrived at this conclusion. The police report is a very brief document that appears consistent with the record evidence. It thus cannot operate to excuse Kolvek's procedural default of his claims.

### D. Disparate Treatment of a Similarly Situated Defendant

Kolvek asks this Court to consider another defendant to a different crime, Mr. Capluck. Kolvek alleges, and the State does not dispute, that Mr. Capluck received very different treatment from Kolvek's trial judge on extremely similar facts to Kolvek's. (*See* Doc. 1 at 36-37; Doc. 17 at 13, 17.)

This is not helpful to Kolvek, however, because a trial judge has considerable discretion, and differential treatment of a similarly situated defendant, standing alone, is not a particularly probative indication that a judge has abused his discretion, much less that a given defendant's constitutional rights were violated.

### 3. Kolvek Cannot Sustain a Due Process Claim

Kolvek contends that his due process rights were violated, both when the trial court denied his attorney's request for a continuance and when the trial court admitted "similar acts

evidence." As discussed extensively in the R&R these determinations simply were not "contrary to" or "an unreasonable application of" Supreme Court precedent. (*See* Doc. 20 at 30-39.)[12] While this Court might well have treated these procedural and evidentiary issues differently if addressing them in the first instance, that is not the standard the Court is to employ. The Magistrate Judge quite correctly concluded that these issues do not merit habeas relief.

### 4. Kolvek's Appellate Counsel Was Not Constitutionally Ineffective

The Magistrate Judge correctly concluded that Kolvek's counsel was not ineffective. (Doc. 20 at 24-30.) As the R&R correctly articulated, Kolvek could only maintain a claim for ineffective assistance of counsel, if at all, as to one of the claims actually presented to the Ohio courts for consideration. (*Id*. at 12-13.) The Court has independently reviewed each of these claims and finds that none of these rise to the level of constitutionally ineffective counsel for purposes of habeas relief. (*Id*. at 24-30.); *see Knowles v. Mirzayance*, No. 07-1315, 2009 U.S. LEXIS 2329, at *22-23 (U.S. Mar. 24, 2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (citations omitted). In particular, the Court concludes that the issues Kolvek's counsel did not present are not "clearly stronger" than those presented. (*Id*. at 29.); *see also Knowles*, 2009 U.S. LEXIS 2329, at *23 ("Counsel also is not required to have a tactical reason – above and beyond a reasonable

---

[12] Although his precise contention is unclear, it is apparent that Kolvek takes issue with the manner in which the R&R applies *Baldwin v. Reese*, 541U.S. 27 (2004). (*See* Doc. 21 at 7-10.) The Court has reviewed the Magistrate Judge's treatment of *Baldwin* and can find no material error. (*See* Doc. 20 at 36-39.) Indeed, the R&R addresses Kolvek's claim despite concluding that it was not fairly presented to the state court as a constitutional claim. (Doc. 20 at 39 ("Kolvek did not "fairly present" this claim to the state courts as a federal constitutional issue. In addition, Kolvek has failed to demonstrate that the state court rulings on the evidentiary issue are contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.") (emphasis added).)

appraisal of a claim's dismal prospects for success – for recommending that a weak claim be dropped altogether.").[13]

### 5. "Actual Innocence" as an Independent Basis for Habeas Relief

While the Magistrate Judge noted that a habeas court cannot review a claim that a petitioner's conviction was against the manifest weight of the evidence because it is a matter of state law (Doc. 20 at 24), this Court will read Kolvek's petition more broadly. It seems that Kolvek is trying to argue that he has new evidence that bolsters his original "manifest weight of the evidence" appeal, which is, in effect, the contention that Kolvek is "actually innocent" of the underlying offenses.

As this Court has noted before, neither the Sixth Circuit nor the Supreme Court has yet decided whether such a contention is cognizable before a habeas court as an independent basis for relief. *D'Ambrosio v. Bagley*, No. 1:00-CV-2521, 2006 U.S. Dist. LEXIS 12794, at *116-*121 (N.D. Ohio Mar. 24, 2006) *aff'd* 527 F.3d 489 (6th Cir. 2008); *see Cress v. Palmer*, 484

---

[13] Kolvek repeatedly raises the issue of an alleged "fatal variance" in his brief, apparently in conjunction with the allegation that his appellate counsel was ineffective. (*See, e.g.*, Doc. 21 at 19-22); *see also United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) ("A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment…. When a defendant first alleges a variance at trial, this Court will reverse a conviction if a variance occurred and that variance affected [the defendant's] substantial rights.") (citation omitted).

The Court agrees with the Magistrate Judge's conclusion that there is no evidence of any variance at all, much less a fatal one. (*See* Doc. 20 at 28-29.) Consequently, there is no evidence that appellate counsel was ineffective for failing to make claims relating to such a variance. The initial indictment against Kolvek contained six counts (*see* Doc. 1 Ex. B), and this indictment was amended to include a seventh count prior to trial (*see* Doc. 1 Ex. B-5). Kolvek was convicted on six of those seven counts. *Kolvek*, 2004 Ohio 3706, P5. To the extent that Kolvek seems to believe that a fatal variance should be judged with reference to his original indictment, that belief is mistaken. *See United States v. Snow*, 462 F.3d 55, 64 (2d Cir. 2006) (finding no fatal variance between the evidence on which the jury ultimately convicted and a the charges in the amended indictment); *United States v. Urkevich*, 408 F.3d 1031, 1036 (8th Cir. 2005); *United States v. Adames*, 56 F.3d 737, 742-743 (7th Cir. 1995) (same).

17

F.3d 844, 855 (6th Cir. 2007) (noting that the Sixth Circuit has never recognized such a right, but proceeding to examine a free-standing claim on the merits); *Stein v. Eberlin*, No. 1:07-CV-3696, 2009 U.S. Dist. LEXIS 18869, at *9 (N.D. Ohio Mar. 10, 2009) (same). Accordingly, this Court will assume, but not decide, that the conviction of one who is actually innocent would indeed be in violation of the Constitution of the United States and, consequently, a cognizable basis upon which a habeas court could grant relief.[14]

Nevertheless, for the reasons discussed by the Magistrate Judge in his R&R and supplemented by this opinion, Kolvek has failed to produce new evidence that would excuse a procedural default, much less rise to the standard necessary for a habeas court to order a writ on the grounds of actual innocence alone. *See id*.

## VI. CONCLUSION

For the foregoing reasons, the Court therefore **ADOPTS** the R&R and **DENIES** Kolvek's petition for a writ of habeas corpus. Accordingly, Robert M. Kolvek's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and his case **DISMISSED**. The court certifies, pursuant to 28 USC 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 USC 2253; Fed.R.App.P. 22(b).

---

[14] Although the same term, "actual innocence," is used to describe the inquiry necessary to excuse procedural default as well as the potential free-standing claim, this is misleading. To excuse procedural default, a petitioner must bring forth new evidence that is so strong that a juror could not still convict beyond a reasonable doubt. *Jells*, 538 F.3d at 507. Although an extremely high bar in its own right, free-standing actual innocence is far higher than even this. To assert free-standing actual innocence, a petitioner would have to bring forth evidence showing that it is

**IT IS SO ORDERED.**

                **s/Kathleen M. O'Malley**

                **KATHLEEN McDONALD O'MALLEY**
                **UNITED STATES DISTRICT JUDGE**

**Dated: March 31, 2009**

---

more likely than not that a factually innocent person was convicted.  See *D'Ambrosio*, 2006 U.S. Dist. LEXIS 12794, at *116-*121.